Good morning. May it please the Court. I'm Peter Henderson. I represent Kevin Schaul. I guess I wanted to start with what I think is probably the hardest part of the case for us, which is we are on plain error review. We have the burden to show an effect on substantial rights. And the thing that stuck out to me, you know, the Court often talks about this reasonable probability standard. And often the language it uses when it does find that reasonable probability is that it lacks confidence in the outcome of the proceedings. And so, as I was reviewing this case, we were appointed on appeal. What led to my lack of confidence in the outcome was what happened after sentencing. Mr. Schaul submitted a motion to reconsider his appeal bond, and he lays out really, I think what he means to say is he feels like he was duped. He says, look, there were mistakes, no doubt. I knew that these things weren't going out properly. I know that there were bills for things that weren't delivered. But I didn't intend to defraud. I could show that the loss is a lot less. I asked my lawyer to do a lot of things he didn't do. Those are going to be properly the subject of a 2255 petition, I imagine. But what I think they do is it makes clear that it is important that nobody at any point inform Mr. Schaul of the correct mens rea for the offense that he pleaded guilty to, which involves an intent to defraud. The thing that Mr. Schaul has dealt you a tough hand on here is the substance of the allocution. In the plea agreement and in open court, he admitted to submitting, I'm looking right at it, you know it as well as I do, submitted false and fraudulent medical claims. So, you know, I don't know. I mean, my impression of this, Mr. Henderson, so much is that it's a bit of buyer's remorse. He probably expected a much lesser sentence. Sentence didn't land where he wanted it to. He was free to litigate sentencing issues under the carve-out and plea agreement. They didn't get litigated to his content and, you know, as focused as he would have hoped. And he's, you know, he's trying to shoehorn this into this mental state requirement and he had, I think, admitted error in the way it was charged. But the plea allocution is, I think, is, that's the issue for me that's really hard for him to overcome. Right. Well, and he certainly admitted, I mean, he admitted he was in the wrong, right? He admitted that there were mistakes. He admitted that he knew the billings were false or fraudulent. You know, false and fraudulent maybe have different meanings. But, and he admitted that those deliveries weren't made. He actually, it wasn't disjunctive, it was conjunctive, his admission. False and fraudulent. Right, right. And again, you know, we've got cases about is the complexity of what fraud is to a layperson, does that mitigate against a finding? Where if it's not explained to you, hey, you need to have the intent of the fraud and here's what that is, can we have, you know, 100% confidence that he actually understands what the statute is intended against? But no, I mean, that is the big issue in the case. And, you know, I think from Mr. Shaw's perspective, he feels like he was misled in the district court. And so on appeal, one of the things that I was thinking about too, I had a friend who used to describe sort of slam dunk trials as long guilty pleas. You know, there's no defense, you're just going to sit there, the witnesses are going to come in. I think it's important to think about guilty pleas as mini trials. Before trial, right, the government looks at the elements and they say we have to meet this, this, this, and this element. The defendant looks at the elements. That's where can I chip away at? The judge thinks about jury instructions. How do I make sure the jury understands the charge? We don't have what happens in guilty pleas where we have this sort of sloppy amalgamation of terms, you know. We'll think about, well, this is what mail fraud is, this is what wire fraud is, and we're not getting at the elements. And so I think that, you know, that's one of the main concerns here because the elements are basic due process. The Supreme Court's made that clear several times. That's what makes a guilty plea valid. So we do have, you know, trouble on plain error review. We acknowledge that. But we do think that there's enough here to undermine confidence in the outcome, so we'd ask that the court allow Mr. Shaw to withdraw his guilty plea. Thank you. It's still morning, so I'll say good morning, Your Honors. May it please the court, I'm Scott Simpson on behalf of the United States. One sentence of background. The defendant here ran a four-year scheme in which he fraudulently billed to Medicaid a total of more than half a million dollars. As Judge Scudder said at one point, I think what we saw here is in this post-sentence filing that defense counsel referred to, I think there was some buyer's remorse. In the sentencing transcript, if the court were to look at that, defense counsel at sentencing requested no jail time, and Mr. Shaw got 24 months, and I think he was disappointed in that, understandably. The defense here, I think, has an uphill battle on both the law and the facts. As defense counsel acknowledges, on the law they face the plain error standard, and under that standard, this court has held the defendant has to show, among other things, a reasonable probability that he would not have pleaded guilty but for the alleged errors below. Shaw basically, their argument basically comes down to faulting the government for failing to include the words and knowingly in the indictment in the sentencing agreement. This court has held that what willfully means in this context is with intent to defraud, and the government's evidence, which I'd like to summarize briefly, the government's evidence, indeed, the facts that Shaw admitted to in pleading guilty easily established that he had the intent to defraud required by the health care fraud statute. As this court has said, the government can establish intent to defraud by circumstantial evidence, by looking at the details of the scheme and finding that the scheme was reasonably calculated to deceive persons of ordinary prudence and comprehension. So just to run quickly through the evidence, and these go to whether he understood the charges  Shaw had the same retained attorney for the more than two years of the district court proceedings. They received several continuances of the trial and of the sentencing, which gave them plenty of time to research the law, discuss the charges, and so forth. Shaw told the district judges, both the magistrate judge and the district judge, three times that he had had sufficient time to discuss the case with his attorney. He assured the court twice that he was satisfied with this attorney's representation, and he told the court he understood the charges. And, of course, now on appeal, Mr. Shaw does not assert that his counsel was ineffective. Also, turning to Shaw himself and his background, he had already, before he started this scheme to defraud, he already had worked in the medical supply field for about 13 years, and for at least nine of those 13 years he was running his own medical supply business. So he was obviously very familiar with the business, presumably very familiar with how one could operate a scheme like this, and he admitted to carrying out his scheme for four years. I think that says a lot. Another way to say that is he got away with this for four years. I think that says a lot in relation to the fact that the scheme was apparently reasonably calculated to deceive, to use this court's standard. And finally, the scheme only ended when the state discovered billing irregularities during the course of an audit. So Mr. Shaw's claim that he had no intent to defraud in light of all that evidence is simply not credible, unfortunately. He really doesn't even try to establish that he would not have pleaded guilty if not for the alleged errors. So, Your Honors, the totality of the circumstances here shows that the district court committed no error, and certainly much less any clear or obvious error in concluding that Shaw understood the nature of the charges against him and that he could knowingly and voluntarily plead guilty. The Supreme Court has said, one final point, the Supreme Court has said that guilty pleas are indispensable in the operation of the modern criminal justice system and that we should respect the particular importance of the finality of guilty pleas. I think those concepts apply very strongly here, and we urge the court to affirm. Thank you. Mr. Henderson, anything further? Just very briefly, the government contends there's no error here. Mr. Shaw wasn't informed of an essential element of the offense. That's an error. There are other considerations in this case, but the government failed to inform, the judge failed to inform, knowingly and willfully, not just knowingly or willfully. So that's an error. But apart from that, we'll rest on our breaths. Thank you. All right. Thank you. Our thanks to both counsel. The case is taken under advisement, and that completes today's calendar. The court is in recess. Thank you.